1

2

3

4            UNITED STATES DISTRICT COURT

5            EASTERN DISTRICT OF CALIFORNIA

6

7   HIEN VU,                                    No.  1:25-cv-01366-KES-SKO (HC)

8                  Petitioner,
                                                ORDER GRANTING MOTION FOR
9        v.                                     PRELIMINARY INJUNCTION

10  KRISTI NOEM, Secretary of the United        Doc. 3
    States Department of Homeland Security,
11  PAMELA BONDI, Attorney General of the
    United States, JESUS ROCHA, Acting Field
12  Office, San Diego Field Office, and
    TONYA ANDREWS, Facility
13  Administrator of Golden State Annex,

14                 Respondents.

15

16        Petitioner Hien Vu came to the United States as a refugee from Vietnam nearly thirty-five

17  years ago.  In 1997, he was convicted of second degree robbery, an aggravated felony.[1]  Based on

18  that conviction, petitioner was ordered removed to Vietnam and was detained by immigration

19  authorities pending his removal.  However, immigration authorities were unable to carry out

20  petitioner's removal because Vietnam had a policy of not accepting the return of its citizens who

21  arrived in the United States before 1995.  After being detained for over ten months, petitioner

22  filed a petition for writ of habeas corpus and, in 2001, the United States District Court for the

23  Southern District of California ordered his release.

24        Over 24 years later, on August 14, 2025, Immigration and Customs Enforcement ("ICE")

25  agents revoked petitioner's release and re-detained him.  After being detained for nearly two

26  months with no explanation as to why his release had been revoked, petitioner filed a petition for

27  _____

28  [1] Petitioner's aggravated felony conviction was vacated on October 13, 2025.  Doc. 18-1.

1

writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 3.[2]  He argues

that there is no significant likelihood that he will be removed to Vietnam, that ICE failed to

follow its own regulations governing the revocation of a removable noncitizen's release, and that,

if ICE attempts to send him to a third country, it must abide by basic principles of due process,

contrary to its current policies.  *See* Doc. 3.  In response, the government argues that petitioner's

removal to Vietnam is imminent; it offers no response to petitioner's other arguments.

For the reasons explained below, petitioner's motion for temporary restraining order,

which the Court converts to a motion for preliminary injunction, is granted.

## I.    Background[3]

### a.    Petitioner's Background

Petitioner was born in Vietnam in 1978.  Doc. 17-1, Ex. 5.  When he was six years old,

petitioner and his family fled Vietnam and came to the United States as refugees.  Doc. 1, Ex. A,

Vu Decl. at ¶ 2.  Petitioner became a lawful permanent resident.  *Id.*  In 1996, petitioner was

convicted of burglary of a vehicle and sentenced to probation for three years.  Doc. 17-1, Meneses

Decl. at ¶ 16; Doc. 17-1, Ex. 3.  A few months later, he was convicted of second degree robbery,

an aggravated felony, and sentenced to three years in prison.  Doc. 17-1, Meneses Decl. at ¶ 17;

Doc. 17-1, Ex. 5.

Due to petitioner's aggravated felony conviction, the government initiated removal

---

[2] Petitioner named Christopher Larose, warden of Otay Mesa Detention Center, as a respondent.
However, as explained below, petitioner was transferred from Otay Mesa Detention Center to
Golden State Annex, so Christopher Larose is no longer the proper respondent.  The Court sua
sponte substitutes Tonya Andrews, Facility Administrator of Golden State Annex, as respondent.
*See Page v. Cate*, No. C 09-4142 MHP (PR), 2010 WL 2944247, at *2 (N.D. Cal. July 23, 2010)
(recognizing that a court may substitute the respondent sua sponte in a habeas case); *Farooqi v.
Ochoa*, No. SA CV 09-1512 DMG, 2011 WL 1326847, at *1 n.1 (C.D. Cal. Jan. 21, 2011), *report
and recommendation adopted*, No. SA CV 09-1512 DMG, 2011 WL 1326807 (C.D. Cal. Apr. 5,
2011) (same).

[3] The facts set out in this section come from petitioner's verified petition and other evidence in
the record.  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus]
as an affidavit."  *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt*,
833 F.2d 196, 197–98 (9th Cir. 1987)).

proceedings, and the Immigration and Naturalization Service ("INS"), ICE's predecessor, detained petitioner on June 3, 1999. Doc. 17-1, Meneses Decl. at ¶¶ 5–6. An immigration judge ordered petitioner removed to Vietnam, and the Board of Immigration Appeals dismissed petitioner's appeal on September 29, 2000. *Id.* ¶ 9; Doc. 17-1, Ex. 1.

Petitioner could not be removed to Vietnam because no repatriation agreement existed between the United States and Vietnam. *See* Doc. 1, Ex. C at 38 (order granting writ of habeas corpus); Doc. 1, Ex. A, Vu Decl. at ¶ 4. Although the United States and Vietnam finalized a repatriation agreement in 2008, that agreement does not provide for the repatriation of Vietnamese citizens who entered the United States before July 12, 1995, like petitioner. *See* Repatriation Agreement Between the United States of America and Vietnam, U.S. Dep't of State (Jan. 22, 2008), https://www.state.gov/wp-content/uploads/2019/02/08-322-Vietnam-Repatriations.pdf. Despite INS's inability to remove petitioner, it continued to detain him. *See* Doc. 17-1, Meneses Decl. at ¶¶ 9–10.

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Court read an implicit constitutional limitation into 8 U.S.C. § 1231, the statute that allows immigration authorities to detain a noncitizen who has been ordered removed: if a noncitizen has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Once it has been determined that "there is no significant likelihood of removal in the reasonably foreseeable future[,]" then the government must release the noncitizen. *Id.*

In 2001, the United States District Court for the Southern District of California granted a petition for writ of habeas corpus filed on behalf of petitioner and twenty-seven other Vietnamese detainees. Doc. 1, Ex. C, *Tran Binh et al. v. United States Immigration and Naturalization Service et al.*, No. 01-cv-0188 W (AJB) (S.D. Cal. Aug. 6, 2001). Petitioner was released pursuant to that order, ten months after he had been ordered removed. Doc. 1, Ex. A, Vu Decl. at ¶ 4. Upon his release, INS placed petitioner on an order of supervision, which required him to report to INS every six months. Doc. 17-1, Meneses Decl. at ¶ 10. For the following twenty-four

1    years, petitioner remained under that order of supervision and reported to INS, and then ICE, as

2    required.  Doc. 1, Ex. A, Vu Decl. at ¶¶ 5, 10.[4]

3            Petitioner is a father to five children, and the youngest two have special needs and require

4    intensive care.  Doc. 1, Ex. A, Vu Decl. at ¶¶ 11; Doc. 3, Ex. A, Rue Decl. at ¶¶ 2, 5.  One of

5    petitioner's children must be handfed, and another is still in diapers.  Doc. 3, Ex. A, Rue Decl. at

6    ¶ 5.  Petitioner is a single father and supports his children on his own.  Doc. 1, Ex. A, Vu Decl. at

7    ¶¶ 11–12.

8                **b.  The 2020 Memorandum of Understanding**

9            On November 21, 2020, the United States and Vietnam entered into a memorandum of

10   understanding regarding the removal of Vietnamese citizens who arrived in the United States

11   before July 12, 1995.  *See* Doc. 17-1, Ex. 2, November 21, 2020 Memorandum of Understanding

12   Between the Department of Homeland Security and the United States of America and the

13   Ministry of Public Security of the Socialist Republic of Vietnam on the Acceptance of the Return

14   of Vietnamese Citizens who Arrived in the United States Before July 12, 1995 and Who Have

15   Been Ordered Removed from the United States (the "2020 MOU"), publicly available at

16   https://cdn.craft.cloud/5cd1c590-65ba-4ad2-a52c-b55e67f8f04b/assets/media/ALC-FOIA-Re-

17   Release-MOU-bates-1-8-8-10-21.pdf (last visited Oct. 19, 2025).  "The purpose of [the 2020

18   MOU] is to establish a process of review and issuance of travel documents for Vietnamese

19   citizens ordered removed from the United States and to facilitate the acceptance of all such

20   Vietnamese citizens."  *Id.*  It provides that any "individual subject to a final order of removal

21   from the United States" is eligible for acceptance of return by Vietnam if they also meet the

22   following conditions, among others:

23   _____

24   [4] Petitioner was convicted of misdemeanor willful cruelty to a child in 2017 and was sentenced to
     one day in jail.  Doc. 17-1, Meneses Decl. at ¶ 21; Doc. 17-1, Ex. 5.  The declaration of
25   deportation officer Meneses, Jr., also states that petitioner was also convicted of an additional
     misdemeanor offense in 2005 for disturbing the peace.  Doc. 17-1, Meneses Decl. at ¶ 19.  The
26   officer's declaration cites to petitioner's rap sheet in support; however, the rap sheet does not list
     the latter conviction.  *See id.*; Doc. 17-1, Ex. 5.  In their opposition, respondents do not assert the
27   2017 misdemeanor conviction, or the purported 2005 misdemeanor conviction, as the basis for
     petitioner's re-detention.  *See* Doc. 17.  Rather, respondents assert that petitioner was re-detained
28   because there was a substantial likelihood of his removal to Vietnam.

1. Has Vietnamese citizenship and does not have citizenship of any other country at the same time;

2. Has violated U.S. law and has been ordered removed by a U.S. competent authority (and, if sentenced to a prison term, the individual must have completed any term of imprisonment before removal or a U.S. competent authority must have ordered a reduction in the sentence or the individual's release from prison);

3. Resided in Viet Nam prior to arriving to the United States and currently has no right to reside in any other country or territory.

4. [REDACTED]

Doc. 17-1, Ex. 2.[5]  The 2020 MOU generally provides that "[t]his MOU constitutes an understanding only between the Participants [the Department of Homeland Security of the United States of America and the Ministry of Public Security of the Socialist Republic of Vietnam] and does not give rise to any rights or obligations under domestic or international law." *Id.*  The 2020 MOU further states that it "does not create or confer any rights, privileges, or benefits to any individual." *Id.*

### c. Petitioner's Re-Detention and Procedural History

On August 14, 2025, ICE re-detained petitioner at a scheduled check-in.  Doc. 17-1, Meneses Decl. at ¶ 13.  He was initially detained at Otay Mesa Detention Center in San Diego, California.  *Id.* ¶ 15.  The declaration of deportation officer Meneses, Jr. states that ICE began the process of requesting travel documents from Vietnam only on August 26, 2025.  *Id.* ¶ 14.

On October 1, 2025, petitioner, proceeding pro se, filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order in the United States District Court for the Southern District of California, *see* Doc. 3.   He also filed a motion to appoint as counsel the Federal Defenders of San Diego, Inc., who helped him draft his petition and motions.  Doc. 2; *see* Doc. 1 at 1 n.1.  The court granted the motion to appoint counsel.  Doc. 4.  On October 6, 2025, the parties stipulated to transfer the matter to this Court because petitioner had been transferred to Golden State Annex in McFarland, California.  Doc. 6.  After the matter was

---

[5] In the version of the 2020 MOU filed by respondents, one of the required conditions is redacted. Respondents do not explain why the condition is redacted or what it requires.

1  transferred, this Court appointed Assistant Federal Defender Carolyn Wiggin of the Federal

2  Defenders for the Eastern District of California as petitioner's attorney.  Doc. 10.  Respondents

3  filed an opposition on October 22, 2025.  Doc. 17.  Petitioner filed a reply on October 27, 2025.

4  Doc. 18.

5      On October 13, 2025, the Superior Court of San Diego County vacated petitioner's

6  burglary and second-degree robbery convictions.  Doc. 18-1.  Petitioner represents that his

7  immigration counsel will pursue reopening his removal proceedings to restore his status as a

8  lawful permanent resident, given that the final order of removal that was entered in 2000 was due

9  entirely to the aggravated felony conviction, which has now been vacated.  *See* Doc. 18 at 2.

10  **II.    Conversion to a Motion for Preliminary Injunction**

11      When the Court set a briefing schedule on the motion, it ordered the parties to state their

12  position on whether the motion for temporary restraining order should be converted to a motion

13  for preliminary injunction and whether the parties requested a hearing on the motion.  Doc. 11.

14  Neither party objected to converting the motion to one for a preliminary injunction, and neither

15  party requested a hearing.  *See* Doc. 17 at 2 n.3; Doc. 18 at 1.  Given that the standard for issuing

16  a temporary restraining order is the same as for a preliminary injunction, *see Stuhlbarg Int'l Sales*

17  *Co. v. John D. Bush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001), and respondents had notice

18  and opportunity to respond through a written opposition, petitioner's motion is converted to a

19  motion for preliminary injunction.

20  **III.    Legal Standard**

21      "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter*

22  *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–

23  90 (2008)).  "A plaintiff seeking a preliminary injunction must establish that he is likely to

24  succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

25  relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

26  *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S.

27  531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)).  "Likelihood of

28  success on the merits is a threshold inquiry and is the most important factor."  *Simon v. City &*

1    *Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v.*

2    *Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).  "[I]f a plaintiff can only show that there are serious

3    questions going to the merits—a lesser showing than likelihood of success on the merits—then a

4    preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's

5    favor, and the other two *Winter* factors are satisfied."  *Friends of the Wild Swan v. Weber*, 767

6    F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

7    **IV.    Discussion**

8    **a.   Likelihood of Success on the Merits**

9    Petitioner brings three claims: he argues that there is no significant likelihood that ICE

10   will be able to remove him to Vietnam in the reasonably foreseeable future, that ICE violated its

11   own regulations and denied him due process when it revoked his release, and that ICE's current

12   policy setting out its process for deporting noncitizens to third countries violates basic principles

13   of due process.  *See* Doc. 3.  The Court evaluates each claim in turn.

14   **1.    Respondents Fail to Show that Petitioner's Removal is Reasonably**

15   **Foreseeable Under the Governing Framework.**

16   A set of regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may

17   revoke the release of a noncitizen who has been ordered removed.  Section 241.13(i) permits

18   revocation of release "if, on account of changed circumstances, [ICE] determines that there is a

19   significant likelihood that the alien may be removed in the reasonably foreseeable future."[6]

20   8 C.F.R. § 241.13(i)(2).

21   Citing *Zadvydas v. Davis*, 533 U.S. 678 (2001) and *Prieto-Romero v. Clark*, 534 F.3d

22   1053 (9th Cir. 2008), respondents appear to assume that petitioner has the initial burden to show

23   that there is no significant likelihood of removal in the reasonably foreseeable future.  Doc. 17 at

24   3–4.  *Zadvydas* dealt with a noncitizen who had been detained and never released following a

25   final order of removal.  *Zadvydas*, 533 U.S. at 701.  In that context, the Supreme Court held that

26

---

27   [6] It also provides for revocation if a noncitizen "violates any of the conditions of release" in the
     "order of supervision."  8 C.F.R. § 241.13(i)(1).  Respondents do not argue that ICE revoked
28   petitioner's release on that ground.  *See* Doc. 17.

1  "once [an] alien" has been detained for six months and "provides good reason to believe that

2  there is no significant likelihood of removal in the reasonably foreseeable future, the Government

3  must respond with evidence sufficient to rebut that showing." *Id.*

4      However, the burden-shifting framework from *Zadvydas* does not apply here. As another

5  court has noted in a similar context, "[t]his case is not about ICE's authority to detain in the first

6  place upon an issuance of a final order of removal as in *Zadvydas*." *Nguyen v. Hyde*, 788 F.

7  Supp. 3d 144, 152 (D. Mass. 2025). "[T]his is not your typical first round detainment of an alien

8  awaiting removal. Petitioner was previously detained, then released on supervised release for

9  several years, and his 90-day removal period expired." *Escalante v. Noem*, No. 9:25-CV-00182-

10  MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025). As in the *Nguyen* case, "[t]his case is

11  about ICE's authority to *re-detain* [petitioner] after he was issued a final order of removal,

12  detained, and subsequently released on an [order of supervision]." *Nguyen*, 788 F. Supp. 3d at

13  152.

14      ICE's regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), apply to non-citizens in petitioner's

15  situation, and those regulations outline the process to be followed. *Id.*; *Escalante*, 2025 WL

16  2206113, at *3 ("After *Zadvydas*, the immigration regulations were revised to implement

17  administrative review procedures for . . . those who are re-detained upon revocation of their

18  supervised release." (citing 8 C.F.R. § 241.13)).

19      In *Escalante*, the court noted that:

20      Section 241.13(i)(2)[,] [which is] entitled "Revocation for
        removal[,]" provides that "the Service may revoke an alien's
21      [supervised] release under this section and return the alien to custody
        if, on account of changed circumstances, *the Service determines* that
22      there is a significant likelihood that the alien may be removed in the
        reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2) (emphasis
23      added). Section 241.4(b)(4)[,] which is entitled "*Service
        determination under 8 C.F.R. 241.13*[,]" states that, after supervised
24      release under section 241.13, "*if the Service subsequently
        determines*, because of a change of circumstances, that there is a
25      significant likelihood that the alien may be removed in the
        reasonably foreseeable future [to the country to which the alien was
26      ordered removed or] a third county, the alien shall again be subject
        to the custody review procedures under this section." 8 C.F.R.
27      § 241.4(b)(4) (emphasis added).

28  *Escalante*, 2025 WL 2206113, at *3.

8

1    Those "regulations clearly indicate" that when ICE revokes release to effectuate removal,

2    "it is [ICE's] burden to show a significant likelihood that the alien may be removed." *Escalante*,

3    2025 WL 2206113, at *3; *see also Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL

4    2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden

5    on ICE to first establish changed circumstances that make removal significantly likely in the

6    reasonably foreseeable future."); *Abuelhawa v. Noem*, No. 4:25-CV-04128, 2025 WL 2937692, at

7    *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to

8    show a significant likelihood that the alien may be removed in the reasonably foreseeable

9    future."); *Nguyen*, 788 F. Supp. 3d at 150. "Imposing the burden of proof on the alien each time

10    he is re-detained would lead to an unjust result and serious due process implications." *Escalante*,

11    2025 WL 2206113, at *3. Therefore, the Court must determine whether respondents have met

12    their burden to show a changed circumstance indicating a significant likelihood of removal.

13    Respondents argue that, despite their failure to remove petitioner for the past twenty-five

14    years, there is a significant likelihood that petitioner will be removed in the reasonably

15    foreseeable future. Respondents assert that the circumstances have changed since their previous,

16    unsuccessful attempt to remove him because: (1) the 2020 MOU states that Vietnam will accept

17    the return of certain Vietnamese citizens who entered the United States before 1995; (2)

18    according to a news article, Vietnam agreed to expedite requests for travel documents; and (3)

19    ICE is "mak[ing] efforts" to obtain a travel document for petitioner. *See* Doc. 17 at 2–4 (citing

20    Francesco Guarascio, *Vietnam to Support Deportations From US After Tariff Threats, Lawyer*

21    *Says* (Feb. 27, 2025), Reuters, https://www.reuters.com/world/vietnamsupport-deportations-us-

22    after-tariff-threats-lawyer-says-2025-02-28/).

23    These arguments are not persuasive. As an initial matter, it is not clear that petitioner is

24    eligible for return to Vietnam under the terms of the 2020 MOU. There are reasons to doubt that

25    Vietnam will exercise its discretion to issue a travel document to petitioner. To be eligible for

26    return under the terms of the 2020 MOU, one must have "violated U.S. law and [have] been

27    ordered removed"; and when the United States requests travel documents from Vietnam, it must

28    provide "copies or summar[ies] of the criminal judgment[s] and conviction[s] if the crimes were

9

the basis for removal." Doc. 17-1, Ex. 2. As the criminal conviction that formed the basis for

petitioner's removal order has since been vacated, it is not clear that the required conditions under

the 2020 MOU have been met. Petitioner's circumstances appear more akin to the general group

of pre-1995 Vietnamese refugees, who are typically not removable to Vietnam under the terms of

the 2008 repatriation agreement. *See* Repatriation Agreement Between the United States of

America and Vietnam, U.S. Dep't of State (Jan. 22, 2008), https://www.state.gov/wp-

content/uploads/2019/02/08-322-Vietnam-Repatriations.pdf ("Vietnamese citizens are not subject

to return to Vietnam under this Agreement if they arrived in the United States before July 12,

1995 . . . ."). Moreover, if petitioner's immigration counsel is successful in reopening his

removal proceedings, petitioner may become a lawful permanent resident again, in which case he

could not be removed.[7]

Additionally, "the 2020 MOU does not mandate that Vietnam accept all eligible pre-1995

Vietnamese refugees with orders of removal; it 'constitutes an understanding *only* between the

Participants and does not give rise to any rights or obligations under domestic or international

law;' it 'does not create or confer any rights, privileges, or benefits on any individual.'" *Nguyen*,

788 F. Supp. 3d at 151 (quoting 2020 MOU). Therefore, even if petitioner met all criteria for

eligibility under the 2020 MOU, the government "may only request his removal; Vietnam has

total discretion whether to issue a travel document to any individual." *Id.*

Respondents' assertion that Vietnam recently agreed to expedite travel document requests

is not supported by any evidence in the record, and their general assertion that ICE is "mak[ing]

efforts" to obtain travel documents for petitioner is not compelling. Doc. 17 at 3–4. Respondents

do not identify any specific efforts they have made to obtain a travel document from Vietnam for

petitioner, much less whether they have any indication from Vietnam that it is likely to issue such

a travel document. Even if there were evidence of a "possibility that Vietnam will accept

---

[7] It is also unclear if petitioner would meet the required criteria for eligibility because the 2020 MOU lists four such criteria, but the version of the MOU provided by respondents redacts one of the required criteria. *See* Doc. 17-1, Ex. 2. Publicly available versions of the MOU are similarly redacted. *See* 2020 MOU, https://cdn.craft.cloud/5cd1c590-65ba-4ad2-a52c-b55e67f8f04b/assets/media/ALC-FOIA-Re-Release-MOU-bates-1-8-8-10-21.pdf (last visited Oct. 19, 2025).

Petitioner at some point . . . [that] is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future." *Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *16 (W.D. Wash. Aug. 21, 2025).

The phrase "significant likelihood," as used in the regulation, requires something more than a mere possibility. Respondents have not attempted to meet their burden by providing statistics about removals of pre-1995 Vietnamese refugees since the 2020 MOU went into effect. *See Nguyen*, 788 F. Supp. 3d at 151. As the *Nguyen* court pointed out: If the government "submitted 350 requests and Vietnam issued travel documents for 328 individuals, Respondents may very well have shown that removal is significantly likely in the reasonably foreseeable future. On the other hand, if [the government] submitted 3,500 requests and only 328 individuals received travel documents, Respondents would not be able to meet their burden." *Id.* Respondents do not provide such evidence, and they have not met their burden to show a significant likelihood that petitioner will be removed in the reasonably foreseeable future. Petitioner is likely to succeed on this claim.

## 2. ICE Did Not Afford Petitioner the Process He Was Due Under ICE's Own Regulations.

The regulations examined above, 8 C.F.R. §§ 241.13(i) and 241.4(l), also set out the procedures to be followed in revoking release, procedures that protect important due process rights. *See Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental right derived from the Constitution"). Those procedures include:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he [will] be removed in the reasonably foreseeable future, or that he [] has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

1    8 C.F.R. § 241.13(i)(3); *see also Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL

2    2791778, at *5 (E.D. Cal. Aug. 20, 2025).

3         Petitioner's declaration states:

> 4    ICE has never given me any formal paperwork explaining why I was
>       re-detained or identifying any changed circumstances that would
> 5    make my removal easier. . . . I have had no formal meetings with a
>       deportation officer[,] [and have] only had an informal conversation
> 6    with a [deportation officer who] . . . didn't really know anything
>       about my case. . . . I have never [had] a chance to tell ICE why I
> 7    should not be re-detained.

8    Doc. 1, Ex. A, Vu Decl. at ¶¶ 8–9.  Respondents do not contest these assertions and do not

9    provide any evidence that they "notified petitioner of the reasons for revocation," that they

10   "conducted an initial informal interview promptly after his . . . return to [ICE] custody," or that

11   they offered petitioner the "opportunity to respond to the reasons for revocation," as required by

12   8 C.F.R. § 241.13(i)(3).[8]  *See* Doc. 17.

13        "ICE, like any agency, 'has the duty to follow its own federal regulations.'"  *Rombot v.*

14   *Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205

15   (1st Cir. 2003)); *see Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130

16   (2d Cir. 2020) ("[U]nder deeply rooted principles of administrative law, not to mention common

17   sense, government agencies are generally required to follow their own regulations.").  In *United*

---

18   [8] Respondents state, in a footnote, that "[b]ased on information provided to the government by
19   immigration authorities, it appears that Vu was interviewed by those authorities following
     revocation of his release in August."  Doc. 17 at 2 n.2.  Respondents provide no evidence of this
20   in the record.  Their sole declarant, deportation officer Meneses, does not state that an informal
     interview was conducted in compliance with the regulations.  *See* Doc. 17-1, Meneses Decl.
21   Respondents also point out that 8 C.F.R. § 241.13(i)(1) states that ICE can re-detain a noncitizen
     "for an additional six months in order to effect the alien's removal," and therefore, "his current
22   detention falls within the amount of time authorized for such detention."  *See* Doc. 17 at 3
     (quoting 8 C.F.R. § 241.13(i)(1)).  This argument fails because respondents quote this provision
23   out of context.  8 C.F.R. § 241.13(i)(1), which is titled "Violation of conditions of release,"
     provides that if a noncitizen "violates any of the conditions of release," *then* the noncitizen "may
24   be continued in detention for an additional six months in order to effect the alien's removal, if
     possible, and to effect the conditions under which the alien had been released."  8 C.F.R.
25   § 241.13(i)(1).  However, respondents do not argue that ICE re-detained petitioner for violating
     the terms of his release.  The sole ground raised by respondents for petitioner's re-detention is
26   that they could now repatriate him to Vietnam.  However, as addressed above, respondents have
27   failed to show a significant likelihood that they will be able to do so in the reasonably foreseeable
28   future.

*States ex rel. Accardi v. Shaughnessy*, the Supreme Court reversed the dismissal of a habeas petition that alleged the Board of Immigration Appeals had failed to follow its own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). The Court held that, if the petitioner could prove the allegations in the petition, "he should receive a new hearing" and be "afforded the due process required by the regulations." *Id.* at 265–68. Recognizing this principle, other courts have held that "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid.'" *Rombot*, 296 F. Supp. 3d at 388 (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993)); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Because there is no indication that an informal interview was provided . . ., [petitioner's] re-detainment was unlawful."). Petitioner is also likely to succeed on the merits of his claim that the revocation of his release was unlawful for this reason.

### 3. Due Process Requirements Prior to Any Third-Country Removal

Petitioner argues that ICE currently has a policy that directs its agents to disregard basic tenets of due process, as recognized by the Ninth Circuit, when seeking to deport noncitizens to a third country. ICE's current policy provides: "when seeking to remove an alien with a final order of removal . . . to a country other than that specifically referenced in the order of removal," ICE may remove the noncitizen so long as "the United States has received diplomatic assurances from [that] country that aliens removed [there] will not be persecuted or tortured . . . and [] the Department of State believes those assurances to be credible . . . *without the need for further procedures*." Doc. 1, Ex. B (emphasis added). The notice further provides that, if the State Department has not received such credible assurances from that third country:

- [ICE] will serve on the alien . . . a notice [which] includes the intended country of removal and will be read to the alien in a language he or she understands.

- [ICE] will not affirmatively ask whether the alien is afraid of being removed to the country of removal.

- [ICE] will generally wait at least 24 hours following service of the [notice] before effectuating removal. In exigent

13

circumstances, [ICE] may execute a removal order six (6) or more hours after service of the [notice] as long as the alien is provided reasonable means and opportunity to speak with an attorney prior to removal. . . .

- If the alien <u>does not</u> affirmatively state a fear of persecution or torture if removed to the country of removal . . . within 24 hours, [ICE] may proceed with removal to the country identified on the notice. . . .

- If the alien <u>does affirmatively state</u> a fear if removed to the country of removal listed on the [notice], [ICE] will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection under section 241(b)(3) of the INA and the Convention Against Torture (CAT). USCIS will generally screen the alien within 24 hours of referral.

*Id.* Petitioner argues that this policy violates the Due Process Clause. *See* Doc. 3 at 12–14.

Respondents offer no argument in response and do not state whether they are attempting or will attempt to remove petitioner to a country other than Vietnam. *See* Doc. 17. That silence is telling. If ICE follows this policy, petitioner would have no meaningful opportunity to present this claim in any court before he is removed to a third country.

ICE's policy is contrary to Ninth Circuit precedent. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). Therefore, "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates the constitutional right to due process." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016)). Other courts in this circuit have recognized that this policy is unconstitutional, and this Court agrees with those well-reasoned decisions. *See, e.g.*, *Nguyen v. Scott*, 2025 WL 2419288, at *18–23; *Zakzouk v. Becerra*, No. 25-CV-06254-KAW, 2025 WL 2899220, at *4 (N.D. Cal. Oct. 10, 2025); *Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *2–3 (W.D. Wash. Oct. 23, 2025). Petitioner is likely to succeed on the merits of his

14

1    third-country removal claim.

2         **b.  Irreparable Harm**

3         Given that petitioner has shown that the revocation of his release was likely unlawful, and

4    the risk that ICE may attempt to send him to a third country to which he has no ties, petitioner

5    faces irreparable harm absent a preliminary injunction.  Additionally, the Ninth Circuit has

6    recognized that there may be numerous "irreparable harms imposed on anyone subject to

7    immigration detention," such as "subpar medical and psychiatric care in ICE detention facilities

8    [and] the economic burdens imposed on detainees and their families as a result of detention."

9    *Hernandez v. Sessions,* 872 F.3d 976, 999 (9th Cir. 2017).  Petitioner is a single father with five

10   kids, two of whom have special needs and require significant care.  Doc. 3, Ex. A, Rue Decl. at

11   ¶ 5.  One must be handfed, and the other needs assistance cutting up food.  *Id.*  One is still in

12   diapers.  *Id.*  Petitioner stated that he had only $3,500 left in the bank when he filed his petition.

13   Doc. 1, Ex. A, Vu Decl. at ¶¶ 12–13.  In petitioner's absence, his girlfriend has had to take care of

14   his children because their mother is not around and petitioner's parents have passed away.  *Id.*  If

15   petitioner remains detained, he and his family will suffer irreparable harm; petitioner's removal to

16   a third country would amplify those harms.

17        Moreover, "[i]t is well established that the deprivation of constitutional rights

18   'unquestionably constitutes irreparable injury.'"  *Hernandez*, 872 F.3d at 994 (quoting *Melendres*

19   *v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  "When an alleged deprivation of a constitutional

20   right is involved, most courts hold that no further showing of irreparable injury is necessary."

21   *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, &

22   Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)).  Given the Court's conclusions

23   that ICE failed to follow the procedures of 8 C.F.R. § 241.13(i), which protect his due process

24   rights, and that ICE's current policy of deporting noncitizens to third countries with little or no

25   notice violates the Due Process Clause, petitioner faces irreparable harm absent a preliminary

26   injunction.

27        **c.  Balance of Equities and Public Interest**

28        When the government is the nonmoving party, "the last two *Winter* factors merge."  *Baird*

*v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted).  Although the government has a strong interest in enforcing the immigration laws, it "cannot reasonably assert that it is harmed in any legally cognizable sense" by being compelled to follow the law.  *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).  Faced with a choice "between [minimally costly procedures] and preventable human suffering," as discussed above, the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor."  *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor.  "The public has a strong interest in upholding procedural protections against unlawful detention [and deportation], and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

### d.  Remedy

The requirements for issuing a preliminary injunction are therefore met.  Petitioner's immediate release is required to return him to the status quo ante—"the last uncontested status which preceded the pending controversy."  *Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025); *see also Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *28 (W.D. Wash. Aug. 21, 2025) (ordering immediate release of noncitizen detained in violation of regulations).

### V.    Conclusion and Order

Accordingly,

1. Petitioner's motion for a preliminary injunction, Doc. 3, is GRANTED.

2. Respondents are ORDERED to release petitioner immediately.

3. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless and until they obtain a travel document for his removal, and unless and until they follow

16

all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures.

4. Respondents are ENJOINED AND RESTRAINED from removing petitioner to any country other than Vietnam, unless they provide the following process:

    a. written notice to both petitioner and petitioner's counsel in a language petitioner can understand;

    b. a meaningful opportunity, and a minimum of ten days, to raise a fear-based claim for protection under the Convention Against Torture prior to removal;

    c. if petitioner is found to have demonstrated "reasonable fear" of removal to the designated country, respondents must move to reopen petitioner's immigration proceedings;

    d. if petitioner is not found to have demonstrated a "reasonable fear" of removal to the country, respondents must afford petitioner a meaningful opportunity, and a minimum of fifteen days, to seek to reopen his immigration proceedings.

5. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See, e.g. Zakzouk v. Becerra*, No. 25-CV-06254-KAW, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025).

6. Respondents may file an additional brief related to the merits of the petition within 30 days, and petitioner may file a reply brief within 15 days of respondents' brief. Alternatively, the parties may stipulate to a different briefing schedule or to submitting the petition on the merits based on the current record.

IT IS SO ORDERED.

    Dated:   November 6, 2025

                                          UNITED STATES DISTRICT JUDGE